UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**RICKY MCCOMB,**

**Plaintiff,**

v.

**OFFICER J.P. ROSS, et al.,**

**Defendants.**

Civil Action No 14-157 (JDB)

---

**MEMORANDUM OPINION**

Plaintiff Ricky McComb has brought this action against several officers of the Metropolitan Police Department ("MPD") and the District of Columbia ("the District"), claiming he was subjected to an unlawful body cavity search in violation of the Fourth Amendment and the laws of the District of Columbia. Before the Court is McComb's motion for leave to file a second amended complaint. Also before the Court is the District's motion for leave to file a surreply in response to plaintiff's motion for leave to amend. For the reasons discussed below, the Court will grant both motions.

**BACKGROUND**

Plaintiff alleges that on February 1, 2013, he was arrested in Northwest D.C. pursuant to an outstanding arrest warrant, and transported to the Third District police station. First Am. Compl. [ECF No. 33] ¶¶ 10, 12. He states that although "[n]o weapons or contraband were found" at the time of his arrest, he was informed by officers at the police station that he would be strip searched. Id. ¶¶ 11–12. At the time of these events, MPD General Order PCA-502.01, Transportation of Prisoners (January 12, 2001) (revised March 28, 2014) ("General Order

1

502.01"), strictly prohibited officers from conducting body cavity searches, defined as the search "of a prisoner's genital and/or anal cavities." Exhibit 1 to Def.'s Rule 15 Opp'n [ECF No. 50-1] at 4. Nonetheless, McComb alleges that, in the presence of other officers including Officer Culver, Officer Ross "pulled Mr. McComb's pants and underwear down, exposing Mr. McComb's genitalia and buttocks . . . then stuck his index finger through Mr. McComb's anus and into Mr. McComb's rectum." First Am. Compl. ¶¶ 15, 17. "When Officer Ross removed his finger, Mr. McComb began weeping. No contraband or weapon was found in Mr. McComb's rectum." Id. ¶ 17. Plaintiff was subsequently taken to Howard University Hospital, "where he was treated for rectal bleeding and abdominal and rectal pain," and later discharged and released from police custody. Id. ¶¶ 21–22. As a result of the incident, plaintiff alleges that he "suffered extreme and severe emotional distress" and "has been subjected to ridicule and disparagement of his manhood." Id. ¶¶ 34–35.

Plaintiff asserts that four MPD officers and the District are liable for violating his rights under the Fourth Amendment to the U.S. Constitution, and for assault, battery, and intentional infliction of emotional distress. Id. ¶¶ 37–46. In his first amended complaint, McComb claimed the District is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), due to its "custom and practice of performing body cavity searches on pretrial detainees without probable cause or a warrant." Id. ¶ 39. Following discovery, McComb now seeks to drop his "custom and practice" municipal liability claim against the District, and replace it with a claim that the District is liable under Monell "due to the MPD's deliberately indifferent failure adequately to train, supervise, and discipline Defendants Ross and Culver." Revised Proposed Second Am. Compl. [ECF No. 53-2] ¶ 47.

2

## PROCEDURAL HISTORY

Although McComb appropriately sought leave from the Court to amend his complaint, Fed. R. Civ. P. 15(a), he has now filed two different versions of the proposed second amended complaint. McComb's <u>original</u> proposed second amended complaint alleged that:

> Officers Ross and Culver have a history of complaints involving similar conduct, with no adequate response by the District of Columbia until after an expression of concern by the United States Attorney's Office in the course of considering prosecution of those officers. The District of Columbia failed adequately to train and supervise these defendant officers, when the need for better training and supervision of those officers was obvious, as was the likelihood that their conduct would result in violations of civilians' constitutional rights.

Original Proposed Second Am. Compl. [ECF No. 49-2] ¶ 32. The District opposed McComb's motion to amend on grounds of futility, arguing that the allegations of the proposed second amended complaint were too conclusory to adequately state a constitutional cause of action. See Def.'s Rule 15 Opp'n [ECF No. 50] at 2, 7. In his reply brief, McComb then stated for the first time detailed factual allegations in support of his new <u>Monell</u> claim. He alleged that "Officers Ross and Culver have an extensive history of complaints involving similar conduct in the 33 months prior to the incident involving plaintiff McComb," and listed eleven prior citizen complaints against them. Pl.'s Rule 15 Reply [ECF No. 51] at 2. In response, the District moved for leave to file a surreply, and argued that the Court "should disregard the facts not alleged in the proposed Complaint." Def.'s Surreply [ECF No. 52] at 2. McComb then filed a response to that motion and attached a <u>revised</u> proposed second amended complaint. The District has now addressed plaintiff's allegations in the revised proposed second amended complaint through its reply in support of its surreply. See Def.'s Surreply Reply [ECF No. 54] at 4–9.

No doubt, plaintiff's failure to plead all relevant allegations in his original proposed second amended complaint was not the best practice. See Local Civil Rule 15.1. Nonetheless, the Court

3

sees no reason to elevate form over substance where McComb is able to plead detailed factual allegations in support of his claim. Rule 15 dictates that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Both parties have now fully argued the merits of plaintiff's revised proposed second amended complaint through their briefs on McComb's original motion and the on District's proposed surreply. Accordingly, the Court finds it appropriate to decide plaintiff's motion to amend on the basis of his revised proposed second amended complaint.

The Court will also grant the District's motion for leave to file a surreply. Although "surreplies are generally disfavored," the Court finds that the District's proposed surreply and the subsequent briefs are "helpful to the resolution of the pending motion," Banner Health v. Sebelius, 905 F. Supp. 2d 174, 187 (D.D.C. 2012), because they address the facts alleged in McComb's revised proposed second amended complaint. Therefore, the Court will grant the District's motion, and consider the attached surreply and briefs in ruling on McComb's motion to amend.

## LEGAL STANDARD

Rule 15 directs the Court to "freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court may deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman, 371 U.S. at 182. The District argues that McComb's motion to amend should be denied because it is futile and because it would result in undue delay.

4

## ANALYSIS

### I. Futility

The Court may properly deny a motion to amend based on futility "where the proposed pleading would not survive a motion to dismiss." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215 (D.C. Cir. 2010) (internal quotation marks omitted). A review for futility is "identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." Id. at 215–16 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. While the Court must "accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94, (2007) (per curiam), it need not accept "a legal conclusion couched as a factual allegation," Iqbal, 556 U.S. at 678.

A municipality may be held liable under 42 U.S.C. § 1983 "when the execution of its official policy or custom is responsible for the deprivation of constitutional rights." Morgan v. District of Columbia, 824 F.2d 1049, 1058 (D.C. Cir. 1987) (citing Monell, 436 U.S. at 690–94). Municipalities are not subject to liability under § 1983 on the basis of respondeat superior. Rather, a municipality may be held liable under § 1983 only "where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989). To state a

municipal liability claim under § 1983, then, a plaintiff must allege (1) a predicate constitutional violation; and (2) "that a custom or policy of the municipality caused the violation." Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003).

Here, plaintiff has alleged a predicate constitutional violation. He asserts that MPD officers "violated Mr. McComb's right under the Fourth Amendment to the Constitution" when they "probed repeatedly in his rectum, without probable cause or reasonable suspicion to believe that contraband was hidden there." Revised Proposed Second Am. Compl. ¶ 1. Although the District does not concede that the MPD officers subjected McComb to an unlawful body cavity search, it does not argue that McComb failed to sufficiently plead a Fourth Amendment violation. See Def.'s Rule 15 Opp'n at 1–2. Rather, the District argues McComb has not plausibly alleged that any policy or custom of the District caused the alleged constitutional violation. Id. at 4–5. Thus, the primary question is whether McComb has sufficiently pled "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Canton, 489 U.S. at 385.

A municipal policy or custom may "cause" a constitutional violation in various ways, such as when "policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation,'" or when policymakers "knowingly ignore a practice that was consistent enough to constitute custom." Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004) (quoting Monell, 436 U.S. at 694). Additionally, a municipality may be liable when it fails to "respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." Baker, 326 F.3d at 1306 (quoting Canton, 489 U.S. at 390). Thus, a municipality may be liable when its "failure to train its employees in a relevant respect" amounts to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." Connick v. Thompson,

6

563 U.S. 51, 61 (2011) (internal quotation marks and alterations omitted).  Likewise, a municipality can be liable "for inadequately supervising its employees if it was deliberately indifferent to an obvious need for greater supervision."  Kenley v. District of Columbia, 83 F. Supp. 3d 20, 34 (D.D.C. 2015).

Deliberate indifference is a "stringent standard," which requires that the municipality have "actual or constructive notice" of the risk that its employees will violate constitutional rights. Connick, 563 U.S. at 61 (internal quotation marks omitted).  In other words, a municipality may be liable under § 1983 for its deliberately indifferent failure to train or supervise where "the municipality knew or should have known of the risk of constitutional violations" but "adopt[ed] a policy of inaction."  Warren, 353 F.3d at 39 (internal quotation marks omitted).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  Connick, 563 U.S. at 62 (internal quotation marks omitted).  "So too with failure-to-supervise claims."  Kenley, 83 F. Supp. 3d at 35.

Here, plaintiff now alleges that the District is liable under § 1983 due to "MPD's deliberately indifferent failure adequately to train, supervise, and discipline Defendants Ross and Culver."  Revised Proposed Second Am. Compl. ¶ 47.  In support of his claim, plaintiff alleges that "Officers Ross and Culver have an extensive history of complaints involving similar conduct in the 33 months prior to the incident involving plaintiff McComb," and lists eleven complaints against Officers Ross and Culver between May 2010 and May 2012.  Id. ¶ 32.  He states that "[o]nly after the United States Attorney's Office began looking into the incident involving plaintiff McComb and called MPD's attention to the pattern of complaints against officers Ross and Culver did MPD recognize the need for additional training."  Id. ¶ 37.  Accordingly, McComb asserts that the District is liable under § 1983 for its "deliberately indifferent" failure to train or supervise,

because "the need for better training, supervision, and discipline of these officers was obvious, as was the likelihood that their conduct would result in violations of civilians' constitutional rights." Id. ¶ 38.

Taking plaintiff's factual allegations as true, the Court can reasonably infer that the District knew or should have known about the risk that Officers Ross and Culver would violate the constitutional rights of its citizens, that it failed to address that risk, and that its failure caused McComb's alleged constitutional injury. First, McComb has plausibly demonstrated that the District had "actual or constructive knowledge that its agents [would] probably violate constitutional rights." Warren, 353 F.3d at 39. McComb does not rely solely on his own encounter with Officers Ross and Culver, which is typically insufficient to establish municipal liability. See Connick, 563 U.S. at 62; see also Blakeney v. O'Donnell, 117 F. Supp. 3d 6, 12 (D.D.C. 2015) (dismissing plaintiff's municipal liability claim where complaint alleged only one instance of police misconduct—his own encounter with the defendant officers). Rather, he alleges that Officers Ross and Culver were named in eleven previous complaints for similar unlawful conduct. Where plaintiff has alleged numerous instances of prior misconduct, similar to the misconduct alleged here, the Court can plausibly infer that the District had actual or constructive knowledge of the risk that the defendant officers would violate the constitutional rights of its citizens in this manner. See Singh v. District of Columbia, 881 F. Supp. 2d 76, 87–88 (D.D.C. 2012) (finding "the District would have been aware of the risk of constitutional violations" where plaintiff reported police harassment on five separate occasions); Owens v. Baltimore City State's Attorney Office, 767 F.3d 379, 403 (4th Cir. 2014) (holding plaintiff stated municipal liability claim where he alleged that numerous court decisions had found unlawful suppression of evidence by police officers).

Second, McComb has also plausibly pled that the District adopted a "policy of inaction," Warren, 353 F.3d at 39, when it failed "adequately to train, supervise, and discipline Defendants Ross and Culver" in light of these alleged constitutional violations, Revised Proposed Second Am. Compl. ¶ 47. McComb makes several allegations concerning the inadequacy of the District's procedures for officer supervision. Specifically, he alleges that "Officers Ross and Culver have no recollection that any MPD internal investigation was conducted" as a result of the prior complaints, and that "[o]nly two of these incidents appear [in MPD's] Personnel Performance Management System (PPMS), which is intended to track complaints against officers so that appropriate supervisory measures can be taken." Revised Proposed Second Am. Compl. ¶¶ 33–34.

The District attempts to overcome these allegations with several counterarguments. None are persuasive. Although MPD General Order 502.01 flatly prohibits MPD officers from conducting body cavity searches, this does not negate plaintiff's claim for municipal liability as a matter of law, where he alleges that the District was deliberately indifferent to the need for more or different training or supervision. See Connick, 563 U.S. at 62 ("Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" (quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 407 (1997)); Cash v. Cty. of Erie, 654 F.3d 324, 338 (2d Cir. 2011) (noting that municipal liability for "policymakers' continued adherence" to an ineffective training policy "applies with no less force to a supervision claim"); Matthews v. District of Columbia, 730 F. Supp. 2d 33, 38 (D.D.C. 2010) (holding that plaintiff stated municipal liability claim even where MPD order prohibited the type of strip searches alleged in complaint). Nor is

9

the District completely insulated from liability because it "took action" once it was notified of McComb's complaint, Def.'s Surreply Reply at 5, because the premise of a municipal liability claim is that the defendant's actions prior to the constitutional violation caused the violation. Though occasional negligent administration of a program will not establish municipal liability, Canton, 489 U.S. at 391, the District may still be liable where the "frequency of constitutional violations makes it obvious to the municipality that additional training or supervision is necessary," Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 76 (D.D.C. 2005). McComb has made allegations of that type here.

Moreover, McComb has plausibly pled that the District's "deliberate indifference" led to the violation of his constitutional rights, because he has alleged an "identified deficiency" in MPD's internal management system that is "closely related to [his] ultimate injury." Canton, 489 U.S. at 391. McComb alleges that MPD's "internal management, complaints, and/or disciplinary systems are designe[d] and/or operated in a manner that is inadequate to identify and/or correct officers whose conduct violates or is likely to violate the constitutional rights of civilians." Revised Proposed Second Am. Compl. ¶ 36. Given the alleged pattern of complaints against Officers Ross and Culver, the Court can reasonably infer that these supervisory systems were insufficient to prevent the defendant officers from committing constitutional violations like the one alleged here. Thus, McComb has plausibly alleged that MPD's lack of training or supervision actually caused the constitutional violation at issue. See Connick, 563 U.S. at 59 n.5 (noting that plaintiff must prove both deliberate indifference and causation to prevail on municipal liability claim).

Accordingly, "[b]ased on the number of instances of alleged unlawful misconduct," Matthews, 730 F. Supp. 2d at 38, and given that the prior complaints were for conduct similar to

that which McComb has alleged here, it is "plausible" that the District was on actual or constructive notice that more or different training or supervision was necessary to prevent its officers from violating the constitutional rights of its citizens, that it took no action to prevent those violations, and that McComb's constitutional rights were violated as a result.[1] The Court therefore finds that McComb has stated a municipal liability claim against the District that is "plausible on its face," Iqbal, 556 U.S. at 663, and that plaintiff's proposed amendment to the complaint would not be futile.

## II.   Undue Delay

In addition to its futility argument, the District argues that McComb's proposed amendment would result in undue delay. It asserts that "nearly a year has passed since discovery began, and an amended complaint at this stage of the proceedings would unduly delay the case." Def.'s Rule 15 Opp'n at 1. The Court disagrees.

"[T]he grant of leave to amend a complaint might often occasion some degree of delay and additional expense, but leave still should be freely given unless prejudice or delay is undue." Barkley v. U.S. Marshals Serv. ex rel. Hylton, 766 F.3d 25, 39 (D.C. Cir. 2014) (internal quotation marks omitted). An amended complaint may cause undue delay when it is filed several years after the start of litigation, or "only days before trial." Bode & Grenier, LLP v. Knight, 808 F.3d 852, 860 (D.C. Cir. 2015); see also Elkins v. District of Columbia, 690 F.3d 554, 565 (D.C. Cir. 2012) (finding undue delay where motion to amend was filed "five years after the initial complaint and after discovery had closed"). But discovery in this case is not yet closed, and the Court has yet to

---

[1] "Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens v. Baltimore City State's Attorney Office, 767 F.3d 379, 403 (4th Cir. 2014). The Court notes that a municipal liability claim may not withstand a motion for summary judgment where a plaintiff provides evidence of repeated constitutional violations by defendant MPD officers but "offer[s] no evidence about the District's actions." Matthews v. District of Columbia, 924 F. Supp. 2d 115, 122 (D.D.C. 2013) (granting summary judgment to the District where plaintiff failed to offer evidence about the District's training practices).

set a trial date. Although the District protests that plaintiff "is attempting to switch gears" late in the litigation, Def.'s Surreply at 1, McComb's amended Monell claim does little more than "state an alternative theory for recovery," Foman, 371 U.S. at 182. Nor can the District fairly complain about extra and burdensome discovery. Indeed, the District previously agreed to "45 days of fact discovery related to the new [Monell] claim" if the Court were to grant plaintiff's motion to amend. Joint Status Report [ECF No. 47]. Accordingly, the Court finds that allowing McComb to amend the complaint a second time at this juncture would not cause undue delay.

## CONCLUSION

For the foregoing reasons, the Court will grant McComb's motion for leave to file a (revised) second amended complaint and grant the District's motion for leave to file a surreply. A separate order has issued.

/s/
JOHN D. BATES
United States District Judge

Dated: August 12, 2016